OPINION
{¶ 1} Appellants, JJ's Beverage Deli, LLC ("JJ's Beverage") and George O'Brien ("O'Brien"), d.b.a. Eastlake Marathon ("Eastlake Marathon"), appeal the May 11, 2004 judgment entry of the Lake County Court of Common Pleas denying their motion for attorney fees and expenses, pursuant to R.C. 2335.39, from appellee, Ohio Lottery Commission ("Lottery Commission"). For the following reasons, we affirm the decision of the court below.
 {¶ 2} This matter arose following a series of Ohio lottery "Pick 3" wagers placed by Patrick R. Murray ("Murray") at JJ's Beverage and Eastlake Marathon. Janet Jones is the principal owner of JJ's Beverage and was acquainted with Murray for many years as a customer and as a member of the community.
 {¶ 3} Between November 5 and November 7, 2002, Murray wagered approximately $490,000 on the Pick 3 game. Jones extended credit to Murray to cover the wagers. Jones claimed that she was able to cover the cost of these bets with her own funds if Murray failed to pay for the loan. On November 8, 2002, Murray asked for an additional $40,000 in credit to wager. Jones claimed not to have the time or the inclination to place these bets. However, Jones telephoned Murray's wagers to O'Brien's wife at Eastlake Marathon who placed Murray's wagers on credit. On November 8, 2002, Murray won several hundred thousand dollars, although not enough to cover the amount owed.
 {¶ 4} On November 9, 2002, Murray telephoned another $40,000 in wagers to Eastlake Marathon through Jones. Murray also wrote personal checks for $61,250 to JJ's Beverage and $40,000 to Eastlake Marathon to cover the remainder owed.
 {¶ 5} Both of Murray's personal checks were dishonored. Jones and O'Brien had to make deposits of their own money into their respective lottery bank accounts to ensure that there were sufficient funds to cover the Lottery Commission's electronic funds transfer from these accounts.
 {¶ 6} On November 20, 2002, the Lottery Commission wrote to Jones and O'Brien instructing them not to accept further wagers from Murray and advising that they might be in violation of Ohio Administrative Code Section 3770-2-03(B) concerning the "economical and efficient operation" of the lottery and of Section 3770:1-4-02(B)(5) prohibiting "bulk orders of tickets or the placement of wagers via the telephone." Jones and O'Brien requested an adjudicatory hearing. The hearing examiner found that Jones "violated OAC § 3770-2-03(B)(1) by accepting over one-half million dollars of Lottery wagers solely on the word of a customer, then compounding the error by involving a fellow agent." The examiner found that O'Brien "violated OAC § 3770-2-03(B)(1) by accepting four times [his] bond amount in wagers without collecting any funds to secure the debt."
 {¶ 7} On April 4, 2003, the Lottery Commission Director, Dennis Kennedy, adopted the hearing examiner's findings and ordered the revocation of Jones' and O'Brien's sales agent licenses.
 {¶ 8} Jones and O'Brien appealed the Lottery Commission's decision to the Lake County Court of Common Pleas, where the cases were consolidated. The trial court concluded that the Lottery Commission's decision "is supported by reliable, probative and substantial evidence, and is in accordance with the law." The trial court reversed the Lottery Commission's decision, however, on the grounds "that Ohio Admin. Code3770-2-03(B)(1) is unconstitutionally vague on its face and as applied to Appellants herein." The trial court noted that "Appellants have suffered revocation of their Sales Licenses based upon a general finding of financial irresponsibility despite the Hearing Examiner's conclusion that neither Appellant violated any specific rule of regulation of the Ohio Administrative Code. * * * While Appellants may have exercised poor judgment, the Ohio Administrative Code has no specific prohibitions against accepting wagers on credit or wagers on credit in excess of one's bond amount. Moreover, both Appellants had sufficient funds in their Lottery accounts when the funds were due, and stated that they could have covered their losses even if Mr. Murray had not ultimately won."
 {¶ 9} On February 3, 2004, JJ's Beverage and Eastlake Marathon, as the prevailing parties in the litigation, moved the trial court for attorney fees and expenses in the amount of $20,106.92. On May 11, 2004, the trial court denied appellants' motion. This appeal timely follows.
 {¶ 10} JJ's Beverage and Eastlake Marathon raise the following assignment of error: "The lower court erred in ruling that the Appellants [sic] were precluded from an award of attorney fees and expenses pursuant to Ohio Revised Code Section 2335.39."
 {¶ 11} Pursuant to R.C. 2335.39, the prevailing party in an appeal of an adjudication order of a state agency is entitled to move the court for attorney fees and expenses incurred in connection with that appeal. The court hearing such motion shall award the moving party fees "if (1) the state was not substantially justified in initiating the matter in controversy, (2) there are no special circumstances that make the award unjust, (3) the moving party is not the state but is a party to the legal action at issue, and (4) the moving party prevailed in the legal action."State ex rel. R.T.G., Inc. v. State, 98 Ohio St.3d 1, 2002-Ohio-6716, at ¶ 63. An award of fees is not automatic; rather, fees should be awarded "to censure frivolous government action which coerces a party to resort to the court to protect his or her rights." Warren's Eastside Auto Salesv. Ohio Dept. of Public Safety, Motor Vehicle Dealer's Bd., 11th Dist. No. 2002-T-0098, 2003-Ohio-5702, at ¶ 12 (citation omitted).
 {¶ 12} A lower court's award of attorney fees and expenses will not be reversed absent an abuse of discretion. Id. at ¶ 15, citing In reWilliams (1992), 78 Ohio App.3d 556, 558. An abuse of discretion implies that the court's judgment was unreasonable, arbitrary or unconscionable. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169 (citation omitted). To merit reversal, the judgment appealed must be "so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." State v. Jenkins (1984), 15 Ohio St.3d 164, 222 (citation omitted).
 {¶ 13} The trial court found that JJ's Beverage and Eastlake Marathon met all the eligibility requirements of R.C. 2335.39, but denied fees on the grounds that the Lottery Commission was "substantially justified" in initiating the controversy. Specifically, the court held that Ohio Adm. Code 3770-2-03(B)(1) was "presumptively valid" and that the Lottery Commission was entitled to rely upon the law as it existed at the time it initiated the controversy. We agree.
 {¶ 14} We note that "the state's failure to prevail on the merits does not establish a presumption that its actions were not substantially justified." Eastside Auto Sales, 2003-Ohio-5702, at ¶ 13 (citation omitted). As long as the Lottery Commission's decision to revoke JJ's Beverage's and Eastlake Marathon's licenses was supported by an articulated rationale that a reasonable person, knowledgeable in this area of the law, could find correct, the Lottery Commission was substantially justified in initiating the action against appellants. Id. citing Williams, 78 Ohio App.3d at 558.
 {¶ 15} The Lottery Commission initiated proceedings against JJ's Beverage and Eastlake Marathon for alleged violations of Ohio Adm. Code3770-2-03(B), concerning the "economical and efficient operation" of the lottery, and of Ohio Adm. Code 3770:1-4-02(B)(5), prohibiting "bulk orders of tickets or the placement of wagers via the telephone." Ultimately, the Lottery Commission revoked appellants' licenses for violating former Ohio Adm. Code 3770-2-03(B)(1), for accepting large wagers on credit in excess of either appellants' bond amounts. The Lottery Commission believed this conduct demonstrated financial irresponsibility justifying the revocation of the licenses.
 {¶ 16} On appeal of the Lottery Commission's decision, the trial court found that "the decision of the Commission [was] supported by reliable, probative and substantial evidence, and [was] in accordance with the law." However, the trial court found former Ohio Adm. Code 3770-2-03(B)(1) unconstitutionally vague for failing to specify what conduct might be considered "financially irresponsible."
 {¶ 17} The Lottery Commission advanced several arguments in support of Ohio Adm. Code 3770-2-03(B)'s constitutionality before the trial court. The Lottery Commission noted that the Ohio Supreme Court had previously found similarly broad language to be constitutionally permissible. SeeSalem v. Liquor Control Comm. (1973), 34 Ohio St.2d 244 (upholding regulation prohibiting "improper conduct"). The Lottery Commission also argued that the meaning of "financial responsibility" was defined as conduct impeding the "economical and efficient operation of a statewide lottery." The Lottery Commission also argued that Ohio Adm. Code3770-2-03(B) was not susceptible to arbitrary enforcement, since only the Lottery Commission director had authority to revoke a license for financial irresponsibility. Although we rejected these arguments, they provided substantial justification for the Lottery Commission's challenge to the trial court's ruling.
 {¶ 18} JJ's Beverage and Eastlake Marathon argue that this court should adopt a "bright line" rule that, where a statute or regulation is unconstitutional on its face, there can never be "substantial justification" for its enforcement. This we decline to do. It is fundamental that legislative enactments enjoy a strong presumption of constitutionality. State v. Cook, 83 Ohio St.3d 404, 409, 1998-Ohio-291;State v. Collier (1991), 62 Ohio St.3d 267, 269 (citations omitted). "This presumption of constitutionality remains unless it is proven beyond a reasonable doubt that the legislation is clearly unconstitutional."State v. Williams, 88 Ohio St.3d 513, 521, 2000-Ohio-428. As the trial court noted, the Lottery Commission was entitled to rely upon this presumption until proven otherwise. The issue of whether a party is entitled to attorney fees and costs, where the state has relied on a statute or regulation that is unconstitutional on its face, must be decided on a case by case basis in accordance with the standards set forth in R.C. 2335.39.
 {¶ 19} For the foregoing reasons, the trial court was within its discretion in denying attorney fees and costs to JJ's Beverage and Eastlake Marathon. The sole assignment of error is without merit, and the decision of the Lake County Court of Common Pleas is affirmed.
Ford, P.J., Rice, J., concur.